# AGREEMENT WITH RESPECT TO INVENTIONS, CONFIDENTIALITY, COMPETITION AND TERM OF EMPLOYMENT

## MILLER COMPRESSING COMPANY

### POLICY STATEMENT

Miller Compressing Company is engaged in substantial competition with other companies in markets which it serves. It is essential for the welfare of Miller Compressing Company and of all of its employees that no competitor receive any unfair advantage over Miller Compressing Company to assist it in that competition. It is also important to assist the necessary exchange of information within Miller Compressing Company to assure that all of Miller Compressing Company's employees with whom that information is shared will protect it appropriately. Finally, it is important to have a clear recognition of the ownership of inventions created by Miller Compressing Company employees.

### AGREEMENT BY EMPLOYEE

In consideration of my employment by Miller Compressing Company and the promises made to me in this Agreement, the receipt and sufficiency of which are hereby acknowledged, and the payment to me for the term of my employment of salary in the amount agreed upon between us from time to time, the undersigned (hereinafter "Employee") agrees, either as a part of or in addition to my regular duties, as follows:

(1) **Definitions**. As used in this Agreement, the following terms have the meanings indicated:

"Confidential Information" means information related to Employer's business, not generally known in the trade or industry, which Employee learns or creates during the period of Employee's employment with Employer, which may include but is not limited to product specifications, manufacturing procedures, methods, equipment, compositions, technology, formulas, know-how, research and development programs, sales methods, customer lists, customer usages and requirements, computer programs and other confidential technical or business information and data.

"Employer" means and includes Miller Compressing Company, its successors and assigns, any subsidiary of Miller Compressing Company, and any affiliated entity under common control with Miller Compressing Company, whethe[r]

Case 2:14-cv-00367-NJ   Filed 04/01/14   Page 1 of 6   Document 4

EXHIBIT A

now existing or hereafter formed or acquired, by which Employee is now or hereafter employed.

"employment by Employer" means the time (including time prior to the date hereof) during which Employee is employed by any entity comprised within the definition of Employer, regardless of any change in the entity actually employing Employee.

"Inventions" means designs, discoveries, improvements and ideas, whether or not patentable, including, without limitation upon the generality of the foregoing, novel or improved products, processes, machines, promotional and advertising materials, business data processing programs and systems, and other manufacturing and sales techniques, which either (a) relate to (i) the business of Employer or (ii) the Employer's actual or demonstrably anticipated research or development, or (b) result from any work performed by Employee for Employer.

"Terminated Without Cause" means a termination of Employee by Employer without a reason arising from Employee's own action or inaction. It is distinct from "Terminated With Cause," which would include but not be limited to termination for such reasons as: (i) failure of Employee to perform substantially his duties under this agreement, or (ii) felonious acts, acts involving fraud, dishonesty or moral turpitude, or an act of serious misconduct which is injurious to Employer, any other employee of Employer, or Employer's reputation or goodwill, or (iii) business activities conducted by Employee other than those conducted for the benefit of Employer or with the required written consent.

"Trade Secret(s)" means information, including a formula, pattern, compilation, program, device, method, technique or process, that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and that is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

(2) **Employment and Termination.** Subject to the terms and upon the conditions set forth in this Agreement, Employer agrees to employ Employee indefinitely, provided that such employment may be terminated at will by either party at any time. If Employee is Terminated Without Cause, however, Employer agrees to give Employee at least three weeks advance written notice of such a termination, or at Employer's option, Employer may terminate Employee's employment immediately provided that Employer shall continue to compensate Employee for a period of three weeks after such termination at the rate in effect immediately prior to the termination. If Employee is Terminated With Cause, Employer may terminate Employee's

employment immediately without any obligation to pay further compensation beyond that due for services rendered up to the time of termination.

(3) **Disclosure and Assignment of Inventions.** Employee agrees to disclose to Employer and to assign to Employer, and hereby does assign to Employer, all of Employee's rights in any Inventions conceived or reduced to practice at any time during Employee's employment by Employer, either solely or jointly with others and whether or not developed on Employee's own time or with Employer's resources. Employee agrees that Inventions first reduced to practice within one (1) year after termination of Employee's employment by Employer shall be treated as if conceived during such employment unless Employee can establish specific events giving rise to the conception, which occurred after such employment. Further, Employee disclaims and will not assert any rights in Inventions as having been made, conceived or acquired prior to employment by Employer except such as are specifically listed at the conclusion of this Agreement.

(4) **Inventive Records.** Employee agrees to create, maintain, preserve and make available to Employer as part of Employer's property, complete and up-to-date records, including but not limited to, correspondence, prototypes, models and other written or tangible data, of all activity referred to in paragraph (2) hereof.

(5) **Cooperation.** Employee shall cooperate with Employer and shall execute and deliver such documents and do such other acts and things as Employer may request, at Employer's expense, to obtain and maintain letters patent or registrations covering any Inventions and to vest in Employer all rights therein free of all encumbrances and adverse claims.

(6) **Records.** In addition to paragraphs (4) and (5) hereof, Employee shall deliver to Employer the original and all copies of all documents, records, files and property of any nature whatsoever (including but not limited to data stored on any electronic, magnetic, optical or other media of any kind) which are in Employee's possession or control and which are the property of Employer or which relate to the business activities, facilities or customers of Employer, including any records, files, documents or property created by Employee in said capacity. Employee agrees to attend an exit interview upon termination of employment with Employer to ensure that the terms of this Agreement are complied with.

(7) **Confidentiality.** In addition to all duties of loyalty imposed on Employee by law, Employee shall maintain Confidential Information in confidence and secrecy and shall not disclose Confidential Information or use it for the benefit of any person or organization (including Employee) other than Employer without the prior written consent of an authorized officer of Employer (except for disclosures to persons acting on Employer's behalf with a need to know such information), during Employee's employment hereunder and for a period of two (2) years thereafter under any circumstances where any Confidential Information so disclosed or used is

reasonably likely to be used in competition directly or indirectly with Employer in any county of the states of Wisconsin, Illinois, Iowa, Michigan, or Minnesota, or in any municipality in the provinces of Manitoba or Saskatchewan, Canada, wherein Employer bought, sold or actively attempted to buy or sell scrap or scrap products within one (1) year prior to Employee's termination, so long as such information is not generally known to competitors of Employer or to the general public by means other than disclosure by Employee.

(8) **Non-Disclosure of Trade Secrets.** During his or her employment with Employer, Employee shall preserve and protect Trade Secrets of Employer from unauthorized use or disclosure; and after termination of such employment, Employee shall not use or disclose any Trade Secret of Employer for so long as that Trade Secret remains a Trade Secret.

(9) **Third-Party Confidentiality.** Employee shall not disclose to Employer or induce Employer to use any secret or confidential information belonging to persons not affiliated with Employer, including any former employer of Employee. Employee acknowledges that Employer has disclosed that Employer is now, and may be in the future, subject to duties to third parties to maintain information in confidence and secrecy. By executing this Agreement, Employee consents to be bound by any such duty owed by Employer to any third party.

(10) **Noncompetition.** Employee agrees that, at all times during the term of Employee's employment hereunder and, except if Employee is Terminated Without Cause by Employer, for a period of twelve (12) months following the termination, Employee will not, directly or indirectly, participate in or assist:

(a) in any capacity in which Employee could reasonably be expected to utilize Confidential Information or Trade Secrets of Employer, the organization, planning, ownership, financing, management, operation or control of any corporation, partnership, association, or other person or entity which directly competes, or is planning to directly compete, with Employer with respect to buying or selling ferrous or non-ferrous metal scrap or scrap products, or selling equipment used in processing such scrap, which were within Employee's management, operational, purchasing or sales responsibility, including the responsibility of personnel reporting to Employee, at any time within one (1) year prior to Employee's termination, within any county of Wisconsin, Illinois, Iowa, Michigan, or Minnesota, or in any municipality in the provinces of Manitoba or Saskatchewan, Canada, wherein Employer bought or sold, or actively attempted to buy or sell, such products within one (1) year prior to Employee's termination; or

(b) the purchase, sale or solicitation of any purchase or sale of any ferrous or non-ferrous metal scrap or scrap products, or the sale of equipment useful in processing such scrap, of the same type which Employee supervised, bought, sold, attempted to buy or sell, or of which Employee supervised purchase or sale

001.739371.5

4

activities on behalf of Employer, to any Vendor/Customer to or from which Employee had sold or attempted to sell or bought or attempted to buy such goods, or as to which or whom Employee had substantial exposure to Confidential Information or Trade Secrets, during the one (1) year prior to the termination of Employee's employment with Employer. For purposes of this subparagraph, the term "Vendor/Customer" means any person, firm, partnership, corporation, business entity, division or business location that sells or buys scrap or scrap products. In the case of multi-division or multi-location firms, each division or location that independently determines where to buy or sell scrap or scrap products shall be considered a separate Vendor/Customer.

(11) **Nonsolicitation.** For a period of twelve (12) months following termination of employment with Employer, Employee will not, directly or indirectly, either by himself or by providing substantial assistance to others, recruit, employ, or solicit to terminate employment with Employer, any employee of Employer whom Employee supervised or about whom Employee gained Confidential Information during the last twelve (12) months of Employee's employment by Employer.

(12) **Present and Future Employment.** Notwithstanding any other oral or written statement or agreement, Employee and Employer hereby acknowledge and agree that the employment relationship is at will and that either party may terminate the relationship upon notice to the other with or without cause; provided, however, that termination of employment shall not release Employee from Employee's obligations under this Agreement. During employment hereunder and for one year thereafter, before accepting any employment with an entity which directly competes, or is planning to directly compete, with Employer with respect to buying or selling metal scrap or scrap products, or selling equipment used in processing such scrap, Employee shall disclose to Employer the identity of any such entity and a complete description of the duties involved in such prospective employment, including a full description of any territory or market segment to which Employee will be assigned. Further, for two years after termination of employment under this Agreement, Employee agrees that before accepting any future employment, Employee will provide a copy of this Agreement to any prospective employer of Employee, and authorizes Employer to do likewise, whether before or after the outset of the future employment.

(13) **Miscellaneous.** This Agreement may be modified only by a written agreement signed by Employee and a duly authorized officer of Employer. Waiver of a breach of any provision hereof shall not be construed as a waiver of other breaches of the same or other provisions of this Agreement. If any provision of this Agreement shall be held invalid or unenforceable, the validity and enforceability of the other provisions shall not be affected thereby. This Agreement shall be binding upon Employee's personal representatives, successors and assigns.

EMPLOYEE ACKNOWLEDGES HAVING READ AND SIGNED THIS AGREEMENT AND HAVING RECEIVED A COPY THEREOF, INCLUDING THE FOLLOWING NOTICE:

001.739371.5

This Agreement does not apply to an Invention for which no equipment, supplies, facility, or trade secret information of the Employer was used and which was developed entirely on Employee's own time, unless (a) the invention relates (i) to the business of the Employer or (ii) to the Employer's actual or demonstrable anticipated research or development, or (b) the Invention results from any work performed by the Employee for the Employer.

Existing inventions of Employee (if none, so state):

_____
_____
_____
_____
_____
_____

Signed at Milwaukee, Wisconsin, this 7 day of December, 2001.

In the presence of:

_____        _____
                                        (type name)        ("Employee")

_____

Accepted by Miller Compressing Company

By _____