UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TRACY L. WINK,**

    **Plaintiff,**

    v.                                          Case No. 14-CV-367

**MILLER COMPRESSING COMPANY,**

    **Defendant.**

---

### DECISION AND ORDER ON DEFENDANT'S
### MOTION FOR JUDGMENT AS A MATTER OF LAW

---

Tracy L. Wink filed suit against her former employer, Miller Compressing Company, alleging violations of the Family and Medical Leave Act ("FMLA"), non-payment of wages under Wis. Stat. § 109.03, and breach of contract. The case was tried to a jury over three days in August 2015. Miller moved for judgment as a matter of law at the close of Wink's case, which was denied. The jury returned a verdict in Miller's favor on Wink's FMLA interference claim; however, the jury found in Wink's favor on her FMLA retaliation claim, her wage claim, and her breach of contract claim. (Docket # 77.) Currently before me is Miller's renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). (Docket # 87.) Miller argues that judgment as a matter of law on Wink's FMLA retaliation claim, wage claim, and breach of contract claim is proper because the undisputed evidence at trial, viewed in the light most favorable to Wink, does not provide a reasonable jury with legally sufficient evidence to support the verdict. The motion has been fully briefed and is ready for resolution. For the reasons more fully explained below, Miller's motion is denied.

## DISCUSSION

### 1. Rule 50(b) Standard

Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if a "'reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) (quoting Fed.R.Civ.P. 50(a) (motion for judgment as a matter of law), (b) (renewed motion for judgment as a matter of law)). In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence. *Id.* The court does not make credibility determinations or weigh the evidence. *Id.* Although the court reviews the entire record, the court "'must disregard all evidence favorable to the moving party that the jury [was] not required to believe.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000)).

### 2. FMLA Retaliation Claim

Miller moves for judgment as a matter of law on Wink's FMLA retaliation claim. Although an employee who alleges that her employer retaliated against her for exercising her rights under the FMLA can proceed under the direct or indirect methods of proof familiar in employment discrimination litigation, *Smith v. Hope School*, 560 F.3d 694, 702 (7th Cir. 2009), Wink has consistently proceeded under the direct method of proof. Under the direct method, Wink needed to present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between

2

the two. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). I will address each in turn.

*Statutorily Protected Activity*

Miller argues that no reasonable jury could have found that Wink was engaged in a statutorily protected activity because she requested and received approval for her flexible work schedule of two days working from home from her supervisor, Matthew Chavez, instead of someone in Miller's human resources department. (Def.'s Br. in Supp. Renewed JMOL at 3, Docket # 88.) Wink testified that she notified her direct supervisor, Chavez, in February 2012 when her son was removed from daycare that she needed to make a change to her FMLA leave. (Aug. 17, 2015 Transcript of Jury Trial ("Aug. 17 Tr.") at 10, Docket # 97.) Wink testified that she told Chavez that her son was removed from daycare due to his autism. (Aug. 17 Tr. 11.) Wink further testified that she asked Chavez if she could "tak[e] work home with [her] two days a week so [that she] could care for [her son] instead of trying to find a special facility" and stated that Chavez told her that he "would have to talk to upper management and find out if that was going to be doable." (*Id.*)

Wink testified that she filled out her FMLA paperwork with Peggy Malmstadt in the human resources department. (Aug. 17 Tr. 12.) Wink testified that Malmstadt told her that her son's condition qualified for FMLA and that her request for leave had been formally approved. (Aug. 17 Tr. 18.) Wink further testified that she discussed with Malmstadt how her FMLA leave would work while working from home on those two days and also caring for her son. (*Id.*) Wink testified that Malmstadt stated that she was going to track the hours worked that Wink was logging in and "then offset it by what [she] wasn't working and apply it - - that's how [her] FMLA was going to be applied." (Aug. 17 Tr. 19.) Several

3

emails between Wink, Chavez, and Malmstadt indicated Miller's understanding that Wink would be using FMLA leave for part of the time she was out of the office on those two days. (Aug. 17 Tr. 19-20.) Miller also had a spreadsheet that Wink, Chavez, and Malmstadt all had access to that kept track of Wink's hours worked and the hours she took as FMLA leave. (Aug. 17 Tr. 21-23.) Chavez similarly testified that in 2012 Wink was telecommuting for two days a week and was also taking FMLA leave and that he was tracking her FMLA time in a spreadsheet available to Wink, Chavez, and the human resources department. (Aug. 17 Tr. 94-95.)

I cannot weigh the evidence or the credibility of the witnesses on a judgment as a matter of law. The jury was entitled to credit Wink's testimony that she requested FMLA leave on an intermittent basis two days per week and discussed the request with both Chavez and Malmstadt. Wink's testimony was corroborated by Chavez, who acknowledged that he was tracking the time Wink worked from home, which included FMLA hours. On this record, the jury had a legally sufficient evidentiary basis to find that Wink engaged in a statutorily protected activity—requesting and using FMLA leave for at least part of the time—under the FMLA.

*Materially Adverse Action*

Miller argues that no reasonable jury could have found that Wink suffered an adverse employment action because the evidence did not establish that Wink was terminated from her employment. (Docket # 88 at 3-4.) Wink testified that she was told during a meeting that took place on Friday, July 13, 2012 between herself, Chavez, and Sarah Barbian from the human resources department that "the company could no longer accommodate [her] special needs and that [she] needed to start to be in the office every day

4

Monday through Friday," starting on Monday, July 16. (Aug. 17 Tr. 23-24, 27.) Wink testified that she immediately started crying (Aug. 17 Tr. 24) and was very upset because she "knew that it was going to be nearly impossible for [her] to find day care over the weekend by Monday" (Aug. 17 Tr. 26). Wink testified that she told Barbian that her son could not attend daycare because of his autism. (Aug. 17 Tr. 27.)

While Wink acknowledged that no one at Miller specifically told her that she was fired and she never specifically said that she quit, Wink testified that she and her employer were at an "impasse." (Aug. 17 Tr. 71.) Wink testified that she understood that if she could not make daycare arrangements for her son over the weekend, that she "didn't have a job to come back to." (Aug. 17 Tr. 80). Chavez agreed that Miller gave Wink an "ultimatum" regarding changing her schedule. (Aug. 17 Tr. 111.)

Although Barbian testified that all Miller required by Monday morning was a commitment from Wink to change her schedule (Aug. 18, 2015 Transcript of Jury Trial ("Aug. 18 Tr.") at 24, Docket # 98), the jury was entitled to believe Wink's testimony that she needed to have daycare arrangements in place by Monday morning in order to keep her job. Wink's testimony is bolstered by the fact that both Chavez and Barbian testified that Wink became very upset and was crying during this meeting. (Aug. 17 Tr. 108, Aug. 18 Tr. 26.) Barbian testified that Wink told her that she did not know if she could arrange care for her autistic son over the weekend. (Aug. 18 Tr. 27.) The jury was specifically instructed that Wink had to prove by a preponderance of the evidence that Miller terminated her because of her exercise of FMLA rights. (Docket # 76 at 21.) Even though the witnesses agreed that the word "fired" was not spoken by the defendant, on this record, a reasonable jury could

5

have concluded that Wink had been effectively terminated. Thus, I find that the jury had a legally sufficient evidentiary basis to find that Wink suffered an adverse employment action.

*Causal Connection*

Finally, Miller argues that it is entitled to judgment as a matter of law on Wink's retaliation claim because no reasonable jury could have found a causal nexus between Wink's termination and her use of FMLA leave. (Docket # 88 at 5.) The causal nexus element may be met through either a direct admission or through "'a convincing mosaic of circumstantial evidence'" permitting that same inference. *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012) (quoting *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008)). The "convincing mosaic of circumstantial evidence" may include suspicious timing, ambiguous statements from which a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the adverse action. *Id.*

I find that the jury's verdict could reasonably be based on the evidence adduced at trial. Chavez testified that upper management told him to cut two people from his department and that Wink was not initially chosen for the lay-off. (Aug. 17 Tr. 98-99.) He further testified that had Wink been able to be in the office full-time, she would have been the best person in his group to keep. (Aug. 17 Tr. 101.) Chavez also stated that one of the reasons Wink was considered for discharge was because she was unavailable to be in the office five days per week. (Aug. 17 Tr. 104.) When asked whether Wink caused her separation from Miller, Barbian testified that "[s]he didn't make the commitments that the company were asking her to, but the company didn't view it as a discharge." (Aug. 18 Tr. 41.) Thus, construing this evidence strictly in favor of Wink, as I must, a reasonable jury

6

could find that Wink's employment was terminated because she was exercising her rights under the FMLA by taking intermittent leave.

### 3. *Wage Claim and Breach of Contract Claim*

Miller argues that it is entitled to judgment as a matter of law on Wink's § 109.03 wage claim and breach of contract claim because no reasonable jury could find sufficient evidence to establish that Wink was terminated without cause. Wink alleged that Miller violated Wis. Stat. §§ 109.03 and 109.11 for failing to pay her earned severance pay. Wink also alleged that Miller's failure to pay her severance constituted a breach of her December 7, 2011 Agreement With Respect to Inventions, Confidentiality, Competition and Term of Employment (the "Agreement").

Wisconsin's wage claim statute creates a private right of action for employees to recover unpaid wages. *See* Wis. Stat. § 109.03(5). Wages under the statute include severance pay. Wis. Stat. § 109.01(3). Wink testified that she signed the Agreement with Miller on December 7, 2011. (Aug. 17 Tr. 39.) The Agreement provides, in relevant part, that "If Employee is Terminated Without Cause . . . Employer agrees to give Employee at least three weeks advance written notice of such a termination, or at Employer's option, Employer may terminate Employee's employment immediately provided that Employer shall continue to compensate Employee for a period of three weeks after such termination at the rate in effect immediately prior to the termination." (Exh. C to Def.'s Br. in Supp. Renewed JMOL at 2, Docket # 88-3.) "Terminated Without Cause" is defined as "a termination of Employee by Employer without a reason arising from Employee's own action or inaction." (*Id.*)

The jury had a legally sufficient evidentiary basis to find for Wink on both the breach of contract and wage claim issues. As discussed above, there was legally sufficient evidence for the jury to find that Wink was terminated by Miller when she was told that she had to be in the office five days a week starting the Monday after the Friday, July 13, 2012 meeting. Wink testified that she could not make daycare arrangement for her autistic son over the weekend and that Miller was aware of that fact. (Aug. 17 Tr. 26-27.) Barbian testified that it was not Wink's fault that she could not arrange daycare over the weekend. (Aug. 18 Tr. 42.) Given this evidence, a reasonable jury could find that Wink was terminated without cause under the Agreement and the defendant breached the Agreement by failing to pay her three weeks severance pay. By failing to pay her the three weeks severance pay she was owed under the Agreement, the evidence also establishes a violation of Wisconsin's wage claim statute. Thus, Miller is not entitled to judgment as a matter of law on Wink's breach of contract claim and wage claim.

## CONCLUSION

In deciding a motion for judgment as a matter of law under Fed. R. Civ. P. 50, I must construe the evidence strictly in favor of the party who prevailed before the jury and examine the evidence only to determine whether the jury's verdict could reasonably be based on that evidence. I must not make credibility determinations or weigh the evidence. Considering all of the evidence in the light most favorable to Wink, I find that the jury had a legally sufficient evidentiary basis to find in favor of Wink on her FMLA retaliation claim, breach of contract claim, and wage claim. Thus, Miller's renewed motion for judgment as a matter of law is denied.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's Renewed Motion for Judgment as a Matter of Law (Docket # 87) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk of court will contact the parties to schedule a telephone conference regarding the plaintiff's motion to amend the judgment.

Dated at Milwaukee, Wisconsin this 10th day of November, 2015.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge